IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES W. CURRY, | ) |
| | ) |
| Plaintiff | ) |
| | ) No. 05-CV-3209 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| R. JAMES NICHOLSON, Secretary, | ) |
| U.S. Department of Veterans Affairs | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before this Court is a motion for summary judgment filed by R. James Nicholson ("Defendant") against James W. Curry ("Plaintiff") pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendant's motion is GRANTED.

**BACKGROUND**

Plaintiff became the Chief of Police at Westside Veterans Affairs[1] Medical Center ("Westside VA"[2]) in 1987. When that facility merged with Lakeside VA Medical Center ("Lakeside VA") in 1996, he began to serve in the same capacity for the larger VA Chicago Health Care System ("VA Chicago") that was created. At all relevant times preceding his reassignment in July of 2004, Plaintiff's immediate supervisor was Michelle Blakely ("Blakely"), who gave him consistently satisfactory formal evaluations in the relevant years of

---

[1]"Veterans Affairs" will hereinafter be referred to as "VA."

[2]Westside VA was renamed "Jesse Brown VA Medical Center" in 2004, but this court will be referring to the facility by its former name as the parties have done.

-1-

2001 through 2004 but acknowledged being aware of complaints regarding his performance. Following the terrorist attacks of September 11, 2001, the security demands of the VA system increased, and as a result the police service was generally spread thin. Investigations by the General Accounting Office and the Office of Security and Law Enforcement ("OSLE") in 2003 generally substantiated this problem. Over the course of 2003 and 2004, VA Director Richard S. Citron ("Citron") convened a number of Administrative Board of Investigation ("ABI") meetings to investigate anonymous reports of mismanagement within the VA system police service, but the Board found that two of the seven claims were insubstantiated and made no reference to Plaintiff-specific failings in its ultimate recommendations.[3] Citron also called for ABI intervention in light of irregularities at the Lakeside VA and Westside VA.

On June 4, 2004, VA Network Director Joan Cummings requested an additional inspection of the police service, which the OSLE began on July 5th and concluded on July 9th. Plaintiff alleges, and Defendant largely does not dispute, that this investigation was unique in that: (1) members of the police service were largely uninvolved, were generally not called upon to attend entrance and exit meetings, and were not asked to provide their opinions[4]; and (2) the parties failed to disseminate the contents of the report in time to allow sufficient time for rebuttal. Nonetheless, the investigators concluded their work and, at the exit interview, recommended to Citron that Plaintiff be assigned to other duties in light of observed failures in

---

[3]The only claims found to have been supported were those related to logistical management of a canine unit and security of an armory, but in those instances Plaintiff was not singled out as the at-fault party.

[4]Defendant maintains that the two most significant absences, those of Blakely and Plaintiff, resulted from a request of the investigating body itself.

the VA Chicago police service. He agreed to do so, and in the final report, which Curry received on July 26th, this action would be seen as a significant step toward what the investigating body viewed as significant problems:

> Because of the seriousness and amount of deficiencies noted throughout the inspection, the Inspectors had grave concerns about the continued ability of the Police Chief to manage the Police Service. The Inspectors advised the Director at the exit briefing that it would be in the best interest of the hospital staff and the Service to re-assign the Police Chief to another area outside of the Police. Def. Ex. 7 at VA 0539.

On July 12, 2005, Citron met with Plaintiff and informed him that he would be detailed to the Lakeside VA effective immediately, and gave him a letter to that effect.[5] Plaintiff requested but was refused entrance to his office to recover peronal belongings, announced that he wanted to retire, and returned home after starting to feel ill. An extended sick leave followed, during which time Plaintiff did not report to any of the VA branches but communicated with some staff members. There is a remaining question of fact as to whether or not Plaintiff received the OLSE report on or around July 26th, as Defendant maintains.

In any event, while still on leave on September 24, 2004, Plaintiff filed a Complaint of Employment Description with the EEOC. Despite that filing, Plaintiff arrived at work on October 14th, reporting to his new supervisor at the Lakeside VA facility, Harold Rhein ("Rhein").[6] However, according to Plaintiff, Rhein gave him no work, minimal office resources, and little to no guidance as to what his job duties would be. After "twiddling his thumbs" for a few hours, Plaintiff told Rhein that he was interested in retiring, so he returned to Westside VA

---

[5]There is some disagreement as to whether or not Plaintiff received this letter at the meeting.

[6]The parties vary widely in recounting what happened during this time.

to commence the appropriate paperwork. On October 17, 2004, Plaintiff's position at Westside VA became a permanent reassignment, but on November 1st he formally retired from his position.

Plaintiff filed this complaint on May 31, 2005, alleging racial discrimination under Title VII and age-based discrimination under ADEA.

## STANDARDS

In support of its motion for summary judgment, Defendant contends that the Plaintiff submitted no evidence of intolerable working conditions, and that he failed to establish that he met legitimate expectations, identified similarly situated employees, or prove that Defendant's stated reasons were pretextual.

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

Even so, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind.*

*Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, *see Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001); Fed. R. Civ. P. 56(c).

Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A non-moving party who bears the burden of proof on a specific issue must demonstrate by specific factual allegations that there is a genuine issue of material fact in dispute. *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir. 1989). This evidence provided by the non-movant must be sufficient to enable a reasonable jury to find in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must decide, based on admissible evidence, whether any material dispute of fact exists that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In ruling on summary judgment in a case of discrimination in the workplace, "the court should review all of the evidence in the record." *Reeves*, 530 U.S. at 150. In general, a lower court should not substitute its reasoning for that of the fact finder by dividing up the evidence to determine credibility, and will instead leave it to the ultimate fact-finder to determine whether the cumulative evidence is sufficient to prove intent to discriminate. *See generally, id.*

## ANALYSIS

There are two ways for a plaintiff to prove a case of discrimination – the direct method and the indirect method. The plaintiff proves a case under the direct method by putting forth

enough evidence, whether direct or circumstantial, to raise a genuine issue concerning the employer's motivation in carrying out the challenged employment action. *See e.g., Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Plaintiff does not argue that he has offered sufficient direct evidence that the allegedly adverse employment actions taken against him resulted from discrimination on the basis of race or age. Instead, he relies on the second method – the indirect, burden-shifting method first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

Under the burden-shifting method, the plaintiff bears the initial burden of producing evidence to sustain a prima facie case for discrimination. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 742 (7th Cir. 1999). Once the plaintiff establishes this prima facie case, the burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the employment action. *Id*. If the employer offers a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to present evidence that the employer's proffered reason is pretextual. *Id.* The ultimate burden of persuasion rests with the plaintiff to show impermissible motive or intent. *Id.* Employees lose if the company honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish, trivial, or even baseless. *Hartley v. WI Bell Inc.*, 124 F.3d 887 (7th Cir. 1997).

Title VII prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). In order to survive a motion for summary judgment against his Title VII claim, Plaintiff must be able to establish a prima facie case of race-based discrimination by showing: (1) he is a member of a protected class; (2) he was meeting the employer's legitimate expectations; (3) he suffered an adverse employment action;

and (4) other similarly-situated employees who were not members of the class were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802; *see also Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002).

The Age Discrimination in Employment Act ("ADEA") prohibits an employer from, among other preclusions, discharging an employee over 40 years old because of that individual's age. 29 U.S.C. §§ 623(a), 631(a). The Supreme Court has not held the burden-shifting method applies in the ADEA context, but it "makes sense" to use the analysis in a typical ADEA case. *Hartley v. WI Bell Inc.*, 124 F.3d 887, 889 (7th Cir. 1997) (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308 (1996)). Under the burden-shifting approach, to establish a prima facie case of age discrimination under ADEA the plaintiff must show that: (1) he was in a protected age group of persons 40 or older; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) substantially younger employees were treated more favorably. *See Cianci v. Pettibone Corp.*, 152 F.3d 723, 728 (7th Cir. 1999); *Hartley*, 124 F.3d at 892.

In order to establish pretext, the Plaintiff must put forth evidence suggesting that the employer itself did not believe the proferred reasons for termination. *Id.* (citing *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 397 (7th Cir. 1998)). Plaintiff's subjective determination of the true motivation behind the adverse employment action is an insufficient basis for finding that the employer's explanation is pretextual. *See Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir. 1997), quoting *Mills v. First Federal Savings & Loan Ass'n*, 83 F.3d 833, 841-42 (7th Cir. 1996) ("[I]f the subjective beliefs of plaintiffs in

employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed").

Plaintiff must point to specific facts that sufficiently cast doubt on Defendant's proffered reasons for his termination. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 578 (7th Cir. 2003). If Defendant honestly believed the nondiscriminatory reasons it offered, Plaintiff cannot prevail. *See Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 984 (7th Cir. 1999). Furthermore, Plaintiff must present facts "to rebut each and every legitimate, nondiscriminatory reason advanced by the [defendant] in order to survive summary judgment." *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1007 (7th Cir. 2001). This court "does not sit as a superpersonnel department that reexamines an entity's business decisions, [r]ather, we must determine whether the employer gave an honest explanation of its behavior." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971 (7th Cir. 1999).

Plaintiff has failed to established that the the proffered reasons for Defendant's adverse action are pretextual. *McDonnell Douglas*, 411 U.S. at 804. A plaintiff must accomplish this by showing that the defendant's stated reasons are factually baseless, did not actually motivate the defendant, or were insufficient to motivate the adverse employment action. *O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002). "We are not concerned with whether or not the employer's actions were mistaken, ill-considered or foolish, so long as the employer honestly believed those reasons." *Burks v. Wisconsin Dep't of Transp.*, 2006 WL 2788439, at *6 (7th Cir. 2006); *see also Nawrot v. CPC Int'l*, 277 F.3d 896 (7th Cir. 2002). In the words of this circuit, pretext consists of "deceit used to cover one's tracks." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681 (7th Cir. 2000). Defendant claims that the reassignment was executed in

reponse to the OLES evaluation, and Plaintiff has advanced no specific facts that sufficiently cast doubt that this was Defendant's true reason. Instead, Plaintiff attempts to undermine that rationale with a variety of unconvincing arguments and vague conspiracy thoeries.

Plaintiff maintains that he has an unblemished record, and for the most part Defendant acknowledges that this is the case. However, Plaintiff's generally "satisfactory" work evaluations are not sufficient proof that he has met his employer's expectations generally, *see Fortier*, 161 F.3d at 1113 ("[E]arlier evaluations cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment action is taken."); *see also Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 452-453 (7th Cir. 1998) ("[P]ast raises and bonuses do not prove that [plaintiff] was meeting [employer's] legitimate expectations at the time of his discharge."), much less an adequate means of establishing pretext, *Millbrook v. IBP, Inc.*, 280 F.3d 1169 (7th Cir. 2002) (finding in a refusal to hire case that "evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue") (citation omitted).

Defendant's actions are predicated on its awareness of general problems in the police service and the evaluation provided by the OLES. Def.'s Statement of Material Facts ¶ 12. Whether or not that evaluation accurately represented the realities of the VA Chicago workplace, and/or whether Defendant misdirected its chosen remedy for the problems it identified, does not establish that this stated rationale was pretextual. This court is not in a position to determine whether or not the employer was right in making the employment determination that it did.

*Traylor v. Brown*, 295 F.3d 783, 790 (7th Cir. 2002) (ruling that a court shall not "sit as a super-personnel department over employers scrutinizing and second-guessing every decision they make."). Rather, this court is only to decide whether the Defendant was lying or stating a reason for its decision that was completely lacking in factual basis. *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). Here, Plaintiff has provided no basis on which to believe that this is in fact a lie.

Plaintiff's portrayal of the events – that the OLES investigation was manipulated so as to make Plaintiff a scapegoat for the overall failures of the VA Chicago security situation– is simply not supported by the evidence. *See Murray v. Chicago Transit Auth.*, 252 F.3d 880 (7th Cir. 2001) ("This court 'has typically been skeptical of such elaborate plot theories.'") (quoting *Konowitz v. Schnadig Corp.*, 965 F.2d 230, 234 (7th Cir. 1992)). The OLES is by all accounts an independent body, *see, e.g.*, Blakely Dep. at 71, that investigated the Chicago VA and made a finding that Plaintiff should be relocated, Def. Ex. 7 at VA 0539. Plaintiff's belief that the VA organization manipulated its processes to ensure Plaintiff looked bad to this investigating body are unavailing, as his own allegations are of limited value. *Chiaramonte*, 129 F.3d at 401. Citron's repeated investigations and choice to exclude Plaintiff from the OLES process do not amount to "repeated attempts to falsely portray Curry as a deficient manager/service chief" as Plaintiff claims. Pl.'s Resp. to Summ. J. Mot. at 14. Plaintiff seeks support from Blakey and her references to the OLES process as "atypical," "wrong," "very abnormal," and "unfair." *Id.* at 15. However, Blakely's viewpoint does not undermine the stated rationale because her comments go toward the fairness or accuracy of the investigatory process rather than the honesty of its use. Blakely Dep. at 62-86. Likewise, Plaintiff is completely unjustified in claiming that Rhein

admitted "that Curry's reassignment to Lakeside was nothing more than a sham designed to force Curry to 'tread water' until he came to his senes and applied for retirement." Pl.'s Resp. to Summ. J. Mot. at 15. This is simply a distortion of the cited evidence, wherein Rhein actually states that Plaintiff "could have been very productive at Lakeside had he done what had [sic] been asked to do," and that any laxity came out of consideration for "a man come off of sick leave [who has] announced his retirement. At that point *he's prepared* to tread water." Rhein Dep. at 47 (emphasis added); *see generally* (stating that Plaintiff was supposed to work on updating security policies, and that the imminence of retirement was largely a counterbalancing issue due to Plaintiff's prompting). For these reasons, Plaintiff has failed to demonstrate a triable issue of fact concerning Defendant's proffered reasons for reassigning Plaintiff.

Plaintiff has not provided a sufficient basis on which a reasonable jury could find that Defendant did not "honestly believe in its stated nondiscriminatory reasons." *See Jackson*, 176 F.3d at 984. The only question at this point is "whether the employer gave an honest explanation of its behavior," *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 396 (7th Cir. 1998), and though Plaintiff has alleged deficiencies in how Defendant arrived at this explanation, he has failed to establish that it was untrue or deceitful as required by the pretext analysis.

## Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **October 19, 2006**